IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RICHARD ERIC TAYLOR,          )
individually and as Executor  )
for the Estate of DIANE GRUBB )
TAYLOR,                       )
                              )
              Plaintiff,      )    1:12cv688
                              )
         v.                   )
                              )
NORFOLK SOUTHERN RAILWAY      )
COMPANY,                      )
                              )
              Defendant.      )
```

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

This is a damages action that follows a prior personal injury action arising from the same alleged asbestos exposure but was dismissed for failure to timely substitute a personal representative upon the death of Plaintiff's decedent. Defendant Norfolk Southern Railway Company ("NSRC") moves for judgment on the pleadings, arguing that the dismissal of the prior action under Rule 25 of the Federal Rules of Civil Procedure acts as res judicata against the present claims it contends arise out of the same transactions and core of operative facts. (Doc. 18.) For the reasons set forth below, the motion will be granted and the case will be dismissed.[1]

---

[1] NSRC's subsequently filed motion for summary judgment (Doc. 20) and

**I.    BACKGROUND**

The background of this case unfolded over many years and concerns wrongs from asbestos exposure allegedly committed half a century ago.  It spawned two lawsuits, each of which was originally filed in a North Carolina trial court, removed to federal district court, and transferred by the Judicial Panel for Multidistrict Litigation ("JPML") to the Eastern District of Pennsylvania, <u>In re Asbestos Products Liability Litigation</u>, MDL No. 875.  The first of these cases, filed in 2010, was ultimately dismissed, and the second is the present lawsuit.

**A.    The 2010 Lawsuit**

On October 28, 2010, Mr. Richard Eric Taylor and Mrs. Diane Grubb Taylor, husband and wife, filed a complaint in a North Carolina trial court against Defendant NSRC.  (Doc. 18-1, "2010 Complaint.")  Mrs. Taylor brought claims against NSRC for her personal injuries due to asbestos exposure, while Mr. Taylor brought a derivative claim for loss of consortium.[2]  NSRC removed the case to the United States District Court for the Western District of North Carolina.  On January 11, 2011, the JPML

---

Mr. Taylor's motion to partially dismiss household expenses (Doc. 24) need not be reached.

[2] Mrs. Taylor's claims sounded in negligence (first cause of action), premises liability (second cause of action), "take home exposure" (third cause of action), and punitive and exemplary damages (fourth cause of action); Mr. Taylor claimed loss of consortium (fifth cause of action). (Doc. 18-1.)

transferred the case to the Eastern District of Pennsylvania, where it was consolidated for pretrial proceedings in MDL No. 875.

On April 24, 2011, Mrs. Taylor died, and on May 5, 2011, Mr. Taylor was appointed executor of her estate.[3] (Compl. ¶ 3.) On May 26, 2011, Mr. Taylor filed a Statement of Death of a Party, noticing her death to the district court and NSRC. Suggestion of Death, <u>Taylor v. Norfolk S. Ry. Co.</u>, No. 2:11-cv-60075, (E.D. Pa. May 26, 2011), ECF No. 15. On October 27, 2011, Mr. Taylor moved to substitute himself for Mrs. Taylor, as the personal representative of her estate, and to amend the complaint by adding a claim for wrongful death.

Mr. Taylor's motion to substitute was untimely. Under Federal Rule of Civil Procedure 25(a)(1), when a party dies, a substitution must be made "within 90 days after service of a statement noting the death." The motion to substitute was therefore due on August 24, 2011, making Mr. Taylor's October 27 filing over a month late. <u>See</u> Order, <u>Taylor v. Norfolk S. Ry. Co.</u>, No. 2:11-cv-60075, (E.D. Pa. May 29, 2012), ECF No. 44. Finding that the motion to substitute was inexcusably tardy, and given the failure to file a

---

[3] Mr. Taylor also describes his representative capacity as one of "personal representative" of Mrs. Taylor's estate. Under North Carolina's Wrongful Death Act, "only the 'collector of the decedent' or the personal representative – i.e., the administrator of an intestate, or the executor of one who dies testate — may institute an action for wrongful death; and he does so as the representative of the estate." <u>Bowling v. Combs</u>, 298 S.E.2d 754, 756 (N.C. 1983). The term "personal representative" includes both executors and administrators. N.C. Gen. Stat. § 28A-1-1(5).

timely motion for an extension of time, the district court dismissed the entire case. See id. Mr. Taylor moved the court to reconsider the dismissal, but the court denied the motion over a year later. Order, Taylor v. Norfolk S. Ry. Co., No. 2:11-cv-60075, (E.D. Pa. October 4, 2013), ECF No. 47. Mr. Taylor did not appeal these rulings. (Doc. 19 at 4.)

**B.   The Current Lawsuit**

On June 8, 2012, a few days before Mr. Taylor filed his motion for reconsideration, he filed the present action in a different North Carolina trial court, and NSRC removed the case to this court. In this complaint, Mr. Taylor brought Mrs. Taylor's prior personal injury claims now as apparent survival claims, his own claim for loss of consortium in his individual capacity and, as executor of Mrs. Taylor's estate, a claim for wrongful death predicated on Mrs. Taylor's personal injury claims from the first lawsuit.[4] (Doc. 5.) On August 27, 2012, the JPML transferred the case to MDL No. 875. (Docs. 11, 12.) Over a year later, on March 14, 2014, the JPML remanded the case to this court. (Doc. 15.) On April 30, 2014, NSRC filed the present motion for judgment on the pleadings, contending that the dismissal of the 2010 lawsuit

---

[4] The current complaint alleges negligence (first cause of action), premises liability (second cause of action), "take home exposure" (third cause of action), gross negligence — willful, wanton, and reckless conduct (fourth cause of action), loss of consortium (fifth cause of action), and wrongful death action pursuant to N.C. Gen. Stat. § 28A-18-2 (sixth cause of action). (Doc. 5.)

acted as res judicata of the claims in this action.  (Doc. 18.)
The motion has been fully briefed (Docs. 19, 23, 26) and is ready
for resolution.

## II.  ANALYSIS

### A.    Standard of Review

NSRC moves for judgment on the pleadings under Rule 12(c) of
the Federal Rules of Civil Procedure.   The standard of review
governing motions for judgment on the pleadings is the same as
that employed on motions to dismiss for failure to state a claim
under Rule 12(b)(6).  Drager v. PLIVA USA, Inc., 741 F.3d 470, 474
(4th Cir. 2014).   To survive either motion, "a complaint must
contain sufficient factual matter . . . to 'state a claim to relief
that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662,
678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570
(2007)).  A claim is plausible "when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged."  Id.
(citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  A
motion under Rule 12(c) "tests only the sufficiency of the
complaint and does not resolve the merits of the plaintiff's claims
or any disputes of fact."  Drager, 741 F.3d at 474 (citing Butler
v. United States, 702 F.3d 749, 752 (4th Cir. 2012)).

In adjudicating a motion under Rule 12(c), the court may
consider the complaint, the answer, and any documents incorporated

by reference into these pleadings. <u>Mendenhall v. Hanesbrands, Inc.</u>, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). Documents attached to an answer or a motion to dismiss can only be considered if they were integral to and explicitly relied on in the complaint, and if plaintiffs do not dispute their authenticity. <u>Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.</u>, 367 F.3d 212, 234 (4th Cir. 2004). Furthermore, when considering a motion to dismiss on grounds of res judicata, the court "may take judicial notice of facts from a prior judicial proceeding when the res judicata defense raises no disputed issue of fact." <u>Q Int'l Courier, Inc. v. Smoak</u>, 441 F.3d 214, 216 (4th Cir. 2006). In this case, no party has shown a disputed issue of fact concerning the prior lawsuit. Therefore, the court will take judicial notice of the litigants' filings and the court's orders in the prior lawsuit.

**B.    Background North Carolina Law**

While federal law provides the framework for analyzing the motion before the court, North Carolina's law on survivorship and wrongful death under which the two lawsuits' claims are brought are central to its resolution.

Survivorship and wrongful death claims are each created by statute. Under N.C. Gen. Stat. § 28A-18-1(a), a decedent's right to prosecute or defend an action survives the decedent's death, with the right to sue or defend surviving only for the personal representative of the decedent's estate. This survivorship

statute reverses the common law rule that claims abate upon death and simply permits the personal representative to step into the decedent's shoes to prosecute the decedent's cause of action. A judgment entered in a survivorship action "is an asset of the decedent's estate." State Auto Ins. Co. v. Blind, 650 S.E.2d 25, 29 (N.C. Ct. App. 2007). Survivorship actions can be affected by the statute of limitations. If the statute of limitations for the underlying claim has expired when the decedent dies, the survivorship action is barred. See N.C. Gen. Stat. § 28A-18-1(a) (preserving rights to defend against claims of decedent to claims made by decedent's personal representative); Camper v. Manning, No. 2:11CV157, 2011 WL 2550820, at *4 (E.D. Va. June 27, 2011) (applying North Carolina law and holding that statute of limitations defense could be raised against personal representative as it could have been raised against decedent). But if the decedent dies before the underlying claim expires, the personal representative may bring the survivorship claim after the running of the underlying statute of limitations, so long as the claim is brought within one year of the death. N.C. Gen. Stat. § 1-22.

A wrongful death claim is a "distinct and separate" cause of action created by N.C. Gen. Stat. § 28A-18-2. Dunn v. Pac. Employers Ins. Co., 418 S.E.2d 645, 648 (N.C. 1992). The cause of action accrues upon the decedent's death and remedies misconduct

causing death specifically.  _See_ _Raftery v. Wm. C. Vick Const._
_Co._, 230 S.E.2d 405, 407 (N.C. 1976).  As in survivorship claims,
only the personal representative can bring a wrongful death claim.
N.C. Gen. § 28A-18-2(a).  Similarly, wrongful death remedies
include compensation that would be owed the decedent, had he or
she lived.  _Id._ § 28A-18-2(b)(1)–(2).  But unlike survivorship
claims, wrongful death claims allow much broader recoverable
damages for those the decedent has left behind as a result of the
death, including reimbursement for the decedent's funeral
expenses, the loss of decedent's income, and the loss of the
decedent's society and companionship.  _See_ _id._ § 28A-18-2(b)(3)–
(4).  And again unlike survivorship claims, any recovery becomes
not an asset of the estate, but is held in trust for the
beneficiaries designated by the Intestate Succession Act.  N.C.
Gen. Stat. § 28A-18-2(a); _Brown v. S. Ry. Co._, 162 S.E. 613, 617
(N.C. 1932).  To come within the statute of limitations, an action
for wrongful death must be filed within two years of the decedent's
death, and, on the date of the death, the decedent's underlying
claim must not have been barred by the statute of limitations for
bodily injury.  _Dunn_, 418 S.E.2d at 647.

Survivorship and wrongful death actions, though technically
separate, bear an important relationship to one another.  If both
are brought in one complaint, they should be "stated separately,"
and if they are brought in separate actions, they should be

"consolidated for trial." Bowen v. Constructors Equip. Rental Co., 196 S.E.2d 789, 807 (N.C. 1973). But just because the claims are separate and permit overlapping damages does not mean that a defendant will be subjected to double damages for the same wrongful conduct. See id.; Hoke v. Atl. Greyhound Corp., 38 S.E.2d 105, 109–10 (N.C. 1946). A wrongful death claim depends upon the viability of a decedent's personal injury claim (which becomes a survivorship claim upon death). See N.C. Gen. Stat. § 28A-18-2(a) (providing that wrongful death claim exists only where decedent would have had a personal injury claim "if the injured person had lived"); Abney v. Coe, 493 F.3d 412, 421 n.2 (4th Cir. 2007) (noting same); Nelson v. United States, 541 F. Supp. 816, 818 (M.D.N.C. 1982) ("The wrongful death action exists if and only if the decedent could have maintained an action for negligence or some other misconduct if she had survived. . . . The death is not the operative fact upon which liability rests.").

Given this dependent relationship and the fact that the Wrongful Death Act both encompasses and surpasses the recovery on a survivorship claim, a survivorship claim will commonly give way to the wrongful death claim, with the latter providing the exclusive remedy for the decedent's injuries. For example, when a defendant has caused a decedent injuries that ultimately result in death, any survivorship claim merges into the wrongful death claim, with the latter providing the "only remedy." Bolick v. S.

Ry. Co., 50 S.E. 689, 690 (N.C. 1905); accord Blind, 650 S.E.2d at 29 ("[W]e hold that when a single negligent act of the defendant causes a decedent's injuries and those injuries unquestionably result in the decedent's death, the plaintiff's remedy for the decedent's pain and suffering and medical expenses lies only in a wrongful death claim. Such claim is 'encompassed by the wrongful death statute' and 'must be asserted under that statute.'" (quoting Christenbury v. Hedrick, 234 S.E.2d 3, 5 (N.C. Ct. App. 1977)); McDonald v. Suggs, No. 5:07-CV-339-D, 2008 WL 2129860, at *5 (E.D.N.C. May 20, 2008) ("[W]hen a survival action seeks damages that are recoverable under the WDA [Wrongful Death Act], the survival action must be dismissed.").

But when it is alleged that a decedent suffered personal injuries and death that resulted from different causes, the personal representative can plead survivorship and wrongful death claims in the alternative. Alston v. Britthaven, Inc., 628 S.E.2d 824, 826-27, 831 (N.C. Ct. App. 2006) (explaining that there was a "viable alternate explanation" for nursing home resident's death (e.g., Alzheimer's disease), besides the nursing home's conduct that caused some pre-death injuries); cf. Blind, 650 S.E.2d at 29 (finding that motorist's pain and suffering and medical expenses were both "unquestionably" caused by the same negligent conduct of another driver). When the death and pre-death injuries have "viable alternate" causes, the jury must first answer whether the

10

defendant's "wrongful act caused decedent's death." <u>Alston</u>, 628
S.E.2d at 832. If the jury determines it did, the jury must
determine whether the plaintiff can recover for wrongful death
only. <u>Id.</u> But if the jury finds that the defendant did not cause
the decedent's death, the jury must determine the survivorship
action, i.e., whether the defendant caused the decedent's pre-
death injuries and the degree of the decedent's damages excluding
death. <u>Id.</u>

Under North Carolina law, therefore, when a defendant's
conduct causes both injury and death, enabling both survivorship
and wrongful death claims to be brought, the claims should be
brought together, or else a separate judgment on one claim will
preclude the other. <u>See</u> <u>id.</u> at 831. Thus, a judgment on a
survivorship claim will preclude a judgment on a wrongful death
claim, even though the latter remedies a greater array of injuries,
because the damages for both claims result "from a single wrong."
<u>Id.</u> Because survivorship actions claim the same harm as a personal
injury action, the same rule applies to actions taken by the
decedent during his or her lifetime on the underlying personal
injury claim. Thus, a judgment on a personal injury claim during
a plaintiff's lifetime will act as a complete bar[5] against

---

[5] Although using the terms merger and bar, the North Carolina Supreme
Court was employing principles more commonly known today as res judicata
and claim preclusion. <u>See</u> <u>Migra v. Warren City Sch. Dist. Bd. of Educ.</u>,
465 U.S. 75, 77 n.1 (1984); <u>see generally</u> 18 Charles A. Wright et al.,
<u>Federal Practice and Procedure</u> § 4402 (2d ed. 2002).

survivorship and wrongful death claims arising from the same conduct but brought after his death, because the personal injury, wrongful death, and survivorship claims all have their "foundation in a single wrong." Edwards v. Interstate Chem. Corp., 87 S.E. 635, 635-36 (N.C. 1916). This is true even if the personal injury claim brought during the decedent's life was unsuccessful. See id. at 636 ("If the deceased, in his lifetime, has done anything that would operate as a bar to a recovery by him in damages for the personal injury, this will operate equally as a bar in an action by his personal representative for his death." (quoting Francis B. Tiffany, Death by Wrongful Act § 124 (2d ed. 1913)).

North Carolina's rules as to the interplay between personal injury, survival, and wrongful death actions are not unique but rather mirror that of the majority of States. See Smith v. Brown & Williamson Tobacco Corp., 275 S.W.3d 748, 769 (Mo. Ct. App. 2008) (citing Edwards), and the Restatement of Judgments, see Restatement (Second) of Judgments § 45(1) (1982) (providing that a survival action is precluded if the first action proceeded to judgment either "for or against the injured person before he died"), id. § 46 (providing the same for wrongful death claims).

With this background in mind, the court now turns to an analysis of the question presented in this case: whether the dismissal in the 2010 Lawsuit acts as res judicata against the claims in the current action.

**C.  Res Judicata**

Res judicata, also known as claim preclusion, prevents parties from raising claims or defenses in a subsequent lawsuit that were or could have been raised in a prior lawsuit between them.  Pueschel v. United States, 369 F.3d 345, 354 (4th Cir. 2004).  When, as here, one federal court sitting in diversity considers the preclusive effect of a judgment rendered by another federal court sitting in diversity, "the federal common law of res judicata should be applied to protect the integrity of federal judgments, even though a decision is based on state law."  In re Air Crash at Dallas/Fort Worth Airport on Aug. 2, 1985, 861 F.2d 814, 816 (5th Cir. 1988); accord Harnett v. Billman, 800 F.2d 1308, 1313 (4th Cir. 1986).  However, when res judicata implicates "an important question of state law such as privity," also at issue here, federal courts apply state law to determine preclusion. Harnett, 800 F.2d at 1313 (citing Restatement (Second) of Judgments § 87 cmt. b (1982)).

Under federal common law, the party asserting res judicata must demonstrate three elements: "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits."  Pueschel, 369 F.3d at 354–55 (citing Nash Cnty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 486 (4th Cir. 1981)).  Only the second and third elements are disputed

in this case, because Mr. Taylor concedes that the earlier case reached a final judgment on the merits. (See Doc. 23 at 3.)[6]

### 1.   Identity of the Causes of Action

#### a.   Same Transaction Test

The parties dispute whether the causes of action in the present case are the same as those in the prior case. The Fourth Circuit has consistently articulated a clear rule to determine the identity of claims for res judicata purposes, adopted from the Second Restatement of Judgments § 24: There is sufficient identity in the causes of action when claims "arise out of the same transaction or series of transactions, . . . or the same core of operative facts." In re Varat Enterprises, Inc., 81 F.3d 1310, 1316 (4th Cir. 1996) (citations omitted); accord Harnett, 800 F.2d at 1314. This is true even if the claims "involve different harms or different theories or measures of relief." Harnett, 800 F.2d at 1314.

The determination is made pragmatically, considering factors such as "whether the facts are related in time, space, origin, or

---

[6] Under Rule 41(b), an involuntary dismissal, "except one for lack of jurisdiction, improper venue, or failure to join a party under Rule 19[,] operates as an adjudication on the merits," unless the dismissal order states otherwise. The Taylors' earlier suit was dismissed under Rule 25(a), which is not an explicit exception, and the order did not otherwise note that the dismissal was without prejudice. Order, Taylor v. Norfolk S. Ry. Co., No. 2:11-cv-60075, (E.D. Pa. May 29, 2012), ECF No. 44 (attached in this case as Doc. 18-2). Therefore, the dismissal order constituted an adjudication on the merits for res judicata purposes. See Russell v. City of Milwaukee, 338 F.3d 662, 667 (7th Cir. 2003).

motivation, [and] whether they form a convenient trial unit."
Restatement (Second) of Judgments § 24(2).  If it were not, the
court "would allow parties to frustrate the goals of res judicata
through artful pleading and claim splitting given that '[a] single
cause of action can manifest itself into an outpouring of different
claims, based variously on federal statutes, state statutes, and
the common law.'"  Pueschel, 369 F.3d at 355 (quoting Kale v.
Combined Ins. Co. of Am., 924 F.2d 1161, 1166 (1st Cir. 1991)).
The court looks not just to the claims asserted in the earlier
lawsuit, but to all claims that could have been brought.  Nevada
v. United States, 463 U.S. 110, 129–30 (1983); In re Varat, 81
F.3d at 1315.  To preclude claims not brought earlier, the court
need only determine that they were "available" to the plaintiff in
the first action.  Ohio Valley Envtl. Coal. v. Aracoma Coal Co.,
556 F.3d 177, 210–11 (4th Cir. 2009).

Mr. Taylor argues that res judicata cannot bar his wrongful
death claim on account of a terminated prior personal injury action
brought during his decedent's lifetime because under North
Carolina law they are different causes of action.  (Doc. 23 at 7.)
In support, he relies on the North Carolina Supreme Court's passage
in Dunn, 418 S.E.2d at 648, that "[t]he claim for wrongful death
is distinct and separate from the claim for bodily injury . . .
[and] [t]he only relation between the two is that both the personal
injury and resulting death were allegedly caused by the same

15

wrongful conduct." (Doc. 23 at 7.) As is apparent from the preceding discussion, however, the difficulty with this argument is that it ignores applicable North Carolina law and the governing federal standard of the same transaction test.

In general, a decedent's claim for personal injury and her estate's claim for wrongful death are part of the same transaction or occurrence because,

> apart from the measure of damages, recovery for wrongful death in North Carolina depends upon the same proof of actionable negligence or misconduct under the general rules of tort liability which would apply to an action strictly for personal injury. The wrongful death action exists if and only if the decedent could have maintained an action for negligence or some other misconduct if she had survived. Hence, although a wrongful death action may be a distinct cause of action from one for negligent infliction of personal injury, the theory or theories of liability and the operative facts from which liability arises are not different. . . . The death is not the operative fact upon which liability rests.

Nelson, 541 F. Supp. at 818 (citations omitted), cited approvingly by DiDonato v. Wortman, 358 S.E.2d 489, 491 (N.C. 1987) ("In plain English, an action for wrongful death exists if the decedent could have maintained an action for negligence or some other misconduct if he had survived."). Although North Carolina's Wrongful Death Act "creates a new cause of action," it is a right dependent upon, and thus derivative of, a decedent's putative personal injury claim before her death. Mitchell v. Talley, 109 S.E. 882, 884 (N.C. 1921); see also N.C. Gen. Stat. § 28A-18-2 ("When the death of a person is caused by a wrongful act, neglect or default of another,

16

such as would, <u>if the injured person had lived</u>, have entitled the injured person to an action for damages therefor. . . ." (emphasis added)); <u>Wilkerson ex rel. Estate of Wilkerson v. Nelson</u>, 395 F. Supp. 2d 281, 289 (M.D.N.C. 2005) ("Thus, the estate's potential for recovery [for wrongful death] is legally derivative of [decedent's] own ability to recover [for personal injury]."); <u>Brown v. Lumbermens Mut. Cas. Co.</u>, 285 N.C. 313, 319, 204 S.E.2d 829, 834 (1974) ("Plaintiff's right to recover against his intestate's insurer under the uninsured motorist endorsement is derivative and conditional."); <u>Edwards</u>, 87 S.E. at 637 ("[A]lthough the [wrongful death] statute may be considered in some respects as creating a new right of action, it has its foundation in a single wrong . . . ."); <u>id.</u> at 636 ("[A]s the foundation of the right of action is the original wrongful injury to the decedent, it has been generally held that the new action is a right dependent upon the existence of a right in the decedent, immediately before his death to have maintained an action for his wrongful injury." (quoting <u>Michigan Cent. R. Co. v. Vreeland</u>, 227 U.S. 59, 70 (1913)); <u>Sorrells v. M.Y.B. Hospitality Ventures</u>, 424 S.E.2d 676, 678 (N.C. Ct. App. 1993) ("[A]ny wrongful death action on behalf of the decedent driver is derivative . . . ."), <u>rev'd on other grounds</u>, 435 S.E.2d 320 (N.C. 1993).

A comparison of the two complaints at issue here leads to the inescapable conclusion that Mr. Taylor's claim for wrongful death

arose out of the same series of transactions and core of operative facts alleged in the 2010 Complaint. All of NSRC's misconduct alleged in the present complaint is alleged in identical fashion in the 2010 Complaint. All of the basic facts in the two cases "are related in time, space, origin, [and] motivation" because no new misconduct is alleged. Restatement (Second) of Judgments § 24(2). The only difference is that, in this case, Mr. Taylor alleges that NSRC's tortious conduct also gives rise to a claim under the Wrongful Death Act.[7]

Moreover, the facts of the two cases stem from the same transaction, and the personal injury claims (considered as survivorship claims after death) would have made "a convenient trial unit" with the wrongful death claims under the Second Restatement of Judgments § 24(2). North Carolina law treats Mrs. Taylor's personal injury claims (once a personal representative

---

[7] For an analogous case, where the defendant's alleged misconduct was the same in both lawsuits, see Nathan v. Takeda Pharm. Am., Inc., 546 F. App'x 176, 178 (4th Cir. 2013) ("As to identity of the causes of action, the alleged wrongdoing underlying Nathan's claims in this case arises from the same facts underlying the Title VII action. Both cases involve the defendants' conduct regarding Nathan's alleged performance difficulties in 2009. In the Title VII Action, Nathan alleged that the defendants' actions were discriminatory and retaliatory; in this case, he alleges that the same actions constituted a conspiracy to defame him. Under these circumstances, we agree with the district court that these claims arise out of the same transaction or the same core of operative facts."). While unpublished, Nathan is nevertheless valuable for its persuasive authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

was substituted) as part of the same transaction as the wrongful death claim. See Bolick, 50 S.E. at 690 ("[W]hen the death occurs pending an action for personal injuries, of which the death is the greatest, we think such cause is merged in the cause of action for the death, and that the only remedy under our statute is that given under [the Wrongful Death Act], and that the pending action for the lesser [personal] injuries abates."). This is because North Carolina requires that survivorship and wrongful death claims arising from the same conduct be consolidated for trial, lest one be precluded by a judgment in the other. Bowen, 196 S.E.2d at 807; Alston, 628 S.E.2d at 831. And even though the cause of action for a survivorship claim is created by a statute different from the one creating the wrongful death claim, this difference in "form" does not undermine the claims' identity in "substance" for res judicata purposes. Nash Cnty. Bd. of Educ. v. Biltmore Co., 640 F.2d 484, 488 (4th Cir. 1981) (noting, in the antitrust context, that "the identity of two actions, as intimately tied together as these two, will not be destroyed in the res judicata context simply because the two suits are based on different statutes," where one cause of action arose from a state antitrust statute and the other by a federal antitrust statute).

Therefore, under the facts of this case, the two lawsuits

reflect sufficient identity of their causes of action.[8]

###### b.    Exceptions to the Same Transaction Test

Mr. Taylor argues that res judicata should not bar the present lawsuit because the wrongful death claim was "not available until a properly appointed Personal Representative was substituted as a party to the prior action." (Doc. 23 at 9–10.)  Although claim unavailability is an exception to res judicata, it does not save Mr. Taylor's case.

Generally, a claim that arises out of the same transaction or core of operative facts involved in the earlier suit will be barred, but that is not the case where the claim did not "exist" at the time of the earlier case such that the parties lacked a full and fair opportunity to litigate it.  See Union Carbide Corp. v. Richards, 721 F.3d 307, 315 (4th Cir. 2013) (citing Taylor v. Sturgell, 553 U.S. 880, 892 (2008)); Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991).  A claim is deemed to have been previously unavailable in two scenarios.  First, "on rare occasions, when a new statute provides an independent basis for relief which did not exist at the time of the prior action, a second action on the new statute may be justified."  Id. (quoting 18 James Wm. Moore et al., Moore's Federal Practice, § 131.22[3] (3d ed. 2013)).  This exception does not apply to changes in case

---

[8]  No one disputes that Mr. Taylor's loss of consortium claim, brought in both this case and the prior one, are identical.

law, however, which will not generally provide relief from res judicata.  Id. at 315 n.5 (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981)).  Second, and more typically, "a new factual development . . . gives rise to a fresh cause of action."  Union Carbide Corp., 721 F.3d at 315 (citing Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322, 328 (1955)).

Analogizing to Union Carbide, Mr. Taylor argues that, "[b]ecause the North Carolina Wrongful Death Statute created a new cause of action that was unavailable to the Taylors when they brought their initial claims, res judicata does not bar their subsequent claims." (Doc. 23 at 11.)  But he misconstrues Union Carbide and makes no showing that his case involves one of those "rare occasions" where a new statute was passed after the first lawsuit, creating a fresh cause of action.

In Union Carbide, the plaintiffs had previously sought black lung survivors' benefits, but their claims were dismissed in 2006. 721 F.3d at 310–11.  In 2010, Congress amended the United States Code, adding a "fresh cause of action," previously unavailable, that also required proof of different facts from those at issue in the first case.  Id. at 315.  The Fourth Circuit rejected a res judicata defense.  The court explained,

> [W]e recognize that the record evidence has not changed
> since the denial of the original claims and that the
> only relevant change is one of law. . . .  [T]he
> statutory change in law provides a previously
> unavailable basis for relief that justifies the instant

claims, since res judicata does not bar claims that the
parties have not had a "full and fair opportunity to
litigate."

Id. (quoting Taylor v. Sturgell, 553 U.S. 880, 892 (2008)).

Union Carbide's holding has no application to this case.  The
North Carolina General Assembly did not amend the Wrongful Death
Act in an intervening period between the two lawsuits involved
here.  Rather, the law has remained unchanged throughout both
actions.  Mr. Taylor recognized as much when he attempted to amend
the 2010 Complaint to add the wrongful death claim.  See Proposed
Amendment to Complaint for Wrongful Death, Taylor v. Norfolk S.
Ry. Co., No. 2:11-cv-60075, (E.D. Pa. Oct. 27, 2011), ECF No. 25-
3.  Therefore, the intervening law exception does not apply.

The second exception is available when there has been "a new
factual development that gives rise to a fresh cause of action."
Union Carbide, 721 F.3d at 315.  Union Carbide cited, as an example
of such a case, Lawlor v. Nat'l Screen Serv. Corp., 349 U.S. 322
(1955).  Mr. Taylor analogizes his case to the facts in Lawlor,
arguing that whether two lawsuits involved "'essentially the same
course of wrongful conduct' is not decisive" where it gives rise
to a new cause of action.  (Doc. 23 at 8-9 (quoting Lawlor, 349
U.S. at 327).)  Again, Mr. Taylor misperceives the exception.

In Lawlor, the plaintiffs had filed an antitrust lawsuit in
1942, alleging that the defendants had conspired to monopolize in
the distribution of standard accessories by means of exclusive

22

licenses. 349 U.S. at 324. Before trial, the case settled, with
the primary defendant agreeing to license these standard
accessories to the plaintiffs at specified prices. Id. The case
was then dismissed with prejudice. Id.

Later, in 1949, plaintiffs brought claims under the same
antitrust laws, alleging that the defendants had merely used the
earlier settlement "to perpetuate their conspiracy and monopoly,"
as well as alleging that other parties had now joined in the
conspiracy, that the primary defendant was not honestly fulfilling
its obligations under the settlement agreement, and that the
primary defendant was monopolizing in new ways. Id. at 324–25.
The plaintiffs sought damages for the period "beginning several
months after the dismissal of the 1942 complaint." Id. The
defendants raised res judicata as a defense; the district court
agreed and dismissed the case, and the Third Circuit affirmed.
Id. at 325–26.

The Supreme Court reversed, finding that the two lawsuits
were not based on the same cause of action. Id. at 327. As Mr.
Taylor notes, the Court held that just because "both suits involved
essentially the same course of wrongful conduct is not decisive."
Id. (internal quotation marks omitted). The Court explained that
the "conduct presently complained of was all subsequent to the
[earlier] 1943 judgment" and that the new complaint also alleged
new types of monopolization not present in the first case. Id. at

328.  Given such facts, the first judgment could not "be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." Id.

The present case is nothing like Lawlor.  It is not that Mr. Taylor's present lawsuit complains of the same "course" or type of wrongful conduct as the 2010 action; rather, it complains of *precisely the same* conduct.   Lawlor articulated its uncontroversial holding by noting that acceptance of the defendants' rule "would in effect confer on [the defendants] a partial immunity from civil liability for future violations." Id. at 329.  In this case, Mr. Taylor has not alleged that NSRC engaged in any new, unlawful action after dismissal of the 2010 Complaint, so there is no concern that it would gain an unfair advantage.

In reality, the present case is just a disguised collateral attack on the earlier case.  When Mrs. Taylor died during the pendency of the first case, the final element of the wrongful death cause of action was met.  The wrongful death *cause of action* then accrued and became available, see Raftery, 230 S.E.2d at 416, even though the underlying *claimed* tortious conduct remained the same. As the Tenth Circuit explained in a related context:

> [Res judicata] requires a plaintiff to join all claims
> together that the plaintiff has against the defendant
> *whenever during the course of the litigation related*
> *claims mature* and are able to be maintained.  Thus, even
> if an additional claim does not mature until well after

24

the initial complaint has been filed, the plaintiff
nevertheless must seek to amend the complaint to add
additional claims as a compulsory claim when the
additional claim can be brought.

Stone v. Dep't of Aviation, 453 F.3d 1271, 1278–79 (10th Cir.

2006); accord Hatch v. Boulder Town Council, 471 F.3d 1142, 1150

n.7 (10th Cir. 2006) ("[Plaintiff's] lack of any obligation to

supplement his complaint with new and independent claims based on

facts accruing *after* the complaint was filed should be

distinguished from his duty to supplement with claims arising from

the same transaction that *matured* (due to completion of an

administrative process, for example) after the filing of his

complaint." (citing Stone, 453 F.3d at 1278–79)).[9]

---

[9]  In other circuits, the general rule is that "an action need include
only the portions of the claim due at the time of commencing that action."
18 Wright et al., supra, § 4409.  But courts that apply this rule
invariably justify it on the basis that plaintiffs have an opportunity
— and not an obligation — to amend or supplement a complaint. Id.; see,
e.g., Computer Assocs. Int'l, Inc. v. Altai, Inc., 126 F.3d 365, 370 (2d
Cir. 1997).  The Fourth Circuit has not yet spoken on whether it also
would follow this rule.  See Clodfelter v. Republic of Sudan, 720 F.3d
199, 210–11 (4th Cir. 2013) ("Ultimately, we do not decide whether the
relevant time period for a newly articulated claim to satisfy the
exception to res judicata is the point at which the complaint is filed
in the previous case — the plaintiff's position — or the entire pendency
of that case — the district court's view — because we conclude that res
judicata should not apply here for three independent reasons.").  But
even assuming, without concluding, that the Fourth Circuit would adopt
this general rule, the circumstance here is an exceptional one because
the justification for the rule would be undermined.  In this case, Mr.
Taylor had not just the "opportunity" to amend his 2010 Complaint when
Mrs. Taylor died but an "obligation" to do so lest it be dismissed with
prejudice under Rule 25.  Where amendment of the complaint is required
to avoid dismissal, plaintiffs have an obligation to bring all claims
available at the date of amendment.  See, e.g., Salley v. Rendell, No.
Civ. A. 08-132, 2008 WL 1752246, at *8 (W.D. Pa. Apr. 14, 2008)
(dismissing complaint on res judicata grounds where plaintiff failed to
amend complaint as ordered by court).

Once Mr. Taylor filed the notice of death during the prior action, he incurred not an option, but an obligation, to amend his personal injury complaint and substitute himself as personal representative of what necessarily became a survivorship claim, lest the case be dismissed with prejudice as required by Rule 25(a)(1).[10] Mr. Taylor missed the deadline, however, leaving the district court no alternative under Rule 25 but to order a dismissal of the personal injury and loss of consortium claims for a failure to substitute under Rule 25, which is as preclusive as a dismissal for failure to prosecute under Rule 41(b). See 18A Charles A. Wright et al., Federal Practice and Procedure § 4440 & n.1 (2d ed. 2002). Because the personal injury and loss of consortium claims were dismissed with prejudice, any potential survivorship or wrongful death claim, being based on the same alleged wrong, became res judicata.

For these reasons, Mr. Taylor's claims in the two lawsuits are identical for res judicata purposes, and there is no saving exception.

---

[10] Rule 25(a)(1) provides in pertinent part:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

## 2.    Identity of the Parties or Their Privies

The third and final element of res judicata requires an "identity of parties or their privies in the two suits." Pueschel, 369 F.3d at 355 (citing Nash Cnty., 640 F.2d at 486). The court must analyze whether the interests of the parties in the first case "are so identified with the interests" of the parties in this case that "representation by one party is representation of the other's legal right." Weinberger v. Tucker, 510 F.3d 486, 491 (4th Cir. 2007); accord State v. Summers, 528 S.E.2d 17, 20 (N.C. 2000). The identity of these interests is determined by North Carolina law. See Harnett, 800 F.2d at 1313.

In general terms, North Carolina determines privity between parties based on their actual stake in the litigation:

> Whether or not a person was a party to a prior suit must be determined as a matter of substance and not of mere form. The courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest.

King v. Grindstaff, 200 S.E.2d 799, 806 (N.C. 1973) (citations and internal quotation marks omitted). In an action for wrongful death, the "real party in interest" is not the personal representative, who is simply the person permitted to bring the cause of action, but "the beneficiary for whom the recovery is sought." DiDonato, 358 S.E.2d at 491. As noted earlier, the beneficiaries under the Wrongful Death Act are the decedent's heirs

as "provided in the Intestate Succession Act." N.C. Gen. Stat. § 28A-18-2(a); accord Cox v. Shalala, 112 F.3d 151, 155 n.3 (4th Cir. 1997).[11] Mr. Taylor is a beneficiary under that Act, see N.C. Gen. Stat. § 29-14, making him not only a representative party but also a real party in interest.

There is no dispute that Mr. Taylor is in privity with himself as to his loss of consortium claims he brought in both the prior and present cases. Those claims are personal to him, and he remains the same plaintiff, in the same capacity, on each claim.

However, Mr. Taylor argues that there is no privity between Mrs. Taylor, on her prior personal injury action, and the beneficiaries on a wrongful death action for the same injuries because, he contends, the actions "are not brought to enforce the same rights." (Doc. 23 at 14.) For support he relies on a non-precedential opinion from the North Carolina Court of Appeals, which explained that an "action for wrongful death is an action created by statute, and distinct from any underlying claims, even the claim upon which the wrongfulness of the death depends." Udzinski v. Lovin, 583 S.E.2d 648, 652 (N.C. Ct. App. 2003) (Elmore, J., writing only for himself), aff'd, 597 S.E.2d 703 (N.C.

---

[11] By contrast, as noted earlier, any recovery on survivorship claims is an asset of the estate. To the extent Mr. Taylor's complaint seeks survivorship damages, there would be privity for those claims because they represent the same legal right Mrs. Taylor had before she died. See N.C. Gen. Stat. § 28A-18-1(a).

2004).[12] He argues further that the rights remedied by the Wrongful Death Act belong to the decedent's heirs and not to the decedent. Mr. Taylor's arguments are unpersuasive.

Under North Carolina law, a wrongful death claim is derivative of the decedent's personal injury claim. See Abney, 493 F.3d at 421 n.2 ("[I]n North Carolina, a claim for wrongful death 'exists if and only if the decedent could have maintained an action for negligence or some other misconduct if []he had survived.'" (quoting Nelson, 541 F. Supp. at 818). The Wrongful Death Act provides, on its face, that a cause of action only arises where the injured would have had a personal injury claim "if the injured person had lived." N.C. Gen. Stat. § 28A-18-2(a). The actions taken by the decedent during her lifetime can totally bar her heirs' recovery. See Edwards, 87 S.E. at 636–37.[13] Even though they can recover a wider array of damages, the heirs have interests

---

[12] Judge Elmore wrote the lead opinion, in which no other judge joined. Judge Hunter wrote a separate opinion, concurring in the result only. Judge Bryant dissented.

[13] Edwards made its policy choice explicit. As the North Carolina Supreme Court explained, there is no indication that the General Assembly, in adopting the Wrongful Death Act, intended to permit double recovery, subjecting the wrongdoer "to additional liability when he has made compensation to the injured party in his lifetime in full adjustment of the wrong done him." Id. at 637. Had the court held otherwise, it would have prejudiced the injured party herself, making it more difficult for her to reach a resolution with the tortfeasor during her life. With the sword of double-liability "hanging over him," the court explained, "[a] wrongdoer would be little inclined and hardly justified in offering adequate adjustment." Id.

that are legally dependent on those of the decedent.  As such, decedents are in privity with their heirs on a wrongful death claim because the decedent's representation of her own rights during her lifetime constitutes representation of her heirs' rights.

This conclusion is consistent with the approach articulated by the Second Restatement of Judgments, which follows a simple rule that, whenever

> a person has been injured by an act which later causes his death and during his lifetime brought an action based on that act . . . [i]f the action resulted in judgment against the injured person, it precludes a wrongful death action by his beneficiaries to the same extent that the person himself would have been precluded from bringing another action based on the act.

Restatement (Second) of Judgments § 46(1).[14] Under the Restatement, privity of the decedent and her heirs on a wrongful death claim is presumed based on their common relationship to the personal injury judgment.  See id. ch. 1.  It is also the rule followed in a majority of jurisdictions.  See Smith, 275 S.W.3d at 769–74 (collecting cases); see also, e.g., Thompson v. Wing, 637 N.E.2d 917, 923 (Ohio 1994) (applying the Restatement rule and "hold[ing] that beneficiaries in a wrongful death action are in privity with the decedent").

---

[14]  The North Carolina Supreme Court has often relied on the Second Restatement of Judgments for its res judicata analyses, see, e.g., Jonesboro United Methodist Church v. Mullins-Sherman Architects, LLP, 614 S.E.2d 268, 271 (N.C. 2005); Bockweg v. Anderson, 428 S.E.2d 157, 162 (N.C. 1993); Thomas M. McInnis & Associates, Inc. v. Hall, 349 S.E.2d 552, 559 (N.C. 1986), including the privity issue, see Settle By & Through Sullivan v. Beasley, 308 S.E.2d 288, 291–92 (N.C. 1983).

### 3. Summary

All three elements of res judicata are met. Mr. Taylor concedes that the 2010 lawsuit ended in a final judgment on the merits, and the court has determined there is an identity of claims and parties. The claims of the present lawsuit are therefore precluded by the earlier action.

This result admittedly appears harsh but, as the Supreme Court has concluded, "'[s]imple justice' is achieved when a complex body of law developed over a period of years is evenhandedly applied." Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 401 (1981). The Court's explanation applies here equally:

> The predicament in which [Plaintiff] finds himself is of his own making. . . . [The court] cannot be expected, for his sole relief, to upset the general and well-established doctrine of res judicata, conceived in the light of the maxim that the interest of the state requires that there be an end to litigation — a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship.

Id. at 401–02 (quoting Reed v. Allen, 286 U.S. 191, 198–99 (1932)). Mr. Taylor unfortunately missed the Rule 25 deadline he initiated in the prior case, resulting in dismissal of the case with prejudice, and he decided not to appeal that ruling. As a result, the dismissal is res judicata as to the claims of the present lawsuit.

**III. CONCLUSION**

For these reasons,

IT IS THEREFORE ORDERED that NSRC's motion for judgment on the pleadings (Doc. 18) be GRANTED, and the case be DISMISSED WITH PREJUDICE.


                                    /s/   Thomas D. Schroeder
                                    United States District Judge

February 6, 2015